Petroterminal versus Houston Casualty. Good morning. Jared Zola for the appellant. The two insurance policies involved in this case are duty to pay defense costs policies. The insurer's obligation to pay defense costs under a duty to pay policy is determined on the same standard. You say that with such certainty that they are duty to defend policies? They are duty to pay defense costs policies, Your Honor. And the error that the district court made is that they determined because they are not duty to defend policies, that they were duty to indemnify defense costs policies. And as I mentioned, there's a third kind of policy that's a duty to pay defense costs policy. And there's three reasons why we know it's that type of insurance policy and not the other two. And PTP does not contend in this matter that these are duty to defend policies. Why they're duty to pay defense costs policies, three reasons. First, the insuring agreements in both policies promise to pay on behalf of the insured. Those words, on behalf of, have a specific meaning under New York state and federal law. It's a duty- What about the language, though, in the bumbershoot policy which says, and you know these provisions very well, as a consequence of any occurrence covered here under. So isn't that a threshold that has to be crossed before the costs are covered? Your Honor, that's a provision in the definition of damages. And so it must be read in concert with the insuring agreement. The insuring agreement in the bumbershoot policy agrees to pay on behalf of. And then your Honor is quite correct that in the definition of damages, it uses the language, occurrence covered here under. And it says law costs as one of the items as a consequence of any occurrence covered here under. So doesn't that mean there has to be a determination of coverage first before those costs are the responsibility of the insurance company? It does not, your Honor. Why not? That language, occurrence covered here under, means falling within the scope of coverage. That's why I'm saying read in concert with, you pay on behalf of. It means the scope of this coverage provides coverage for an occurrence in the bumbershoot policy. That language says shall pay on behalf of sums which petrol terminals shall become legally liable to pay. Why doesn't that require a finding of legal liability? Judge Shinn, in the Kozlowski case, First Department, 2005, those words, legally liable, mean when the defense invoices become due. That is a contemporaneous obligation to pay defense costs. It does not mean an ultimate resolution of the case. And Judge Joni, to answer your question, to get back to that point, the only case of which I'm aware in this jurisdiction that addresses that language specifically is the Stonewall case. In the Stonewall case, as Judge Winter will recall, the insuring agreement there required the insurer to indemnify the insurer. So in that case, it made perfect sense why the occurrence covered here under language, together with shall indemnify, rendered those policies duty to indemnify policies. But Stonewall said the insurers have a duty to reimburse defense costs for claims that are established to be covered through judgment and settlement. That's right out of that case, right? I'm sorry, say that again. Well, I'm just quoting from Stonewall that insurers have a duty to reimburse defense costs for claims that are established to be covered through judgment and settlement in a reimbursed defense cost kind of case. Your Honor, that's in dicta. Stonewall did not find that the policies it issued in those cases were duty to pay. It found that the policies issued in that case were duty to indemnify defense costs. And then in dicta, much like the district court in our case below, in footnote number two, says, and by the way, if these were not in duty to indemnify policies, there's also this other body of case law, which I'm going to address, that involves the recoupment of defense costs that are paid contemporaneously. And in Stonewall, what they cite for that proposition is a case called Okada in the Ninth Circuit in 1986. And Okada, like each and every one of the cases cited by the insurers, and also the cases that are set forth in footnote number two of Judge Rakoff's decision in district court in this case, involve DNO insurance. And why that recoupment language makes sense in the DNO context and not in our context is the DNO cases, and Kozlowski says this quite clear, frequently involve this intertwined covered and uncovered allegations. And Kozlowski is a great example of this. There's the SEC brought a lawsuit that alleged breaches of fiduciary obligations, which would be covered under a DNO policy, and also that Mr. Kozlowski, when he was an officer of Tyco, personally profited from his wrongdoing. Kozlowski court said, because of the on behalf of language that I mentioned earlier, that this is a duty to pay defense cost policy, and there's a 100% obligation- What is the language of the two policies? What is the language in the two policies that says the insurers have a duty to pay costs, regardless of whether there's ultimate liability or coverage? Judge Chin, it's in the insuring agreement of both policies. The language is, shall pay on behalf of the insured. And those words, on behalf of, have been found by Kozlowski- What about the rest of the language that follows? The rest of the language that follows is standard language found in most, if not all, comprehensive liability policies, whether duty to defend or duty to pay defense costs. And the remainder of the insuring agreement doesn't change that contemporaneous obligation to pay. I believe what the district court was focused on when they deemed these two policies to be duty to indemnify policies, is that the language that Judge Joni picked up on right off the bat. And again, that language, and it's been found by, we cite in our brief cases in footnote nine from across the country, where that specific language that's found, the occurrence covered here under language, does not mean wait until the very end of the case and apply the duty to indemnify standard. What about, though, in the bummershoot policy, condition 4B, the company shall not be called upon to assume charge of the defense of any claim made or suit brought or proceeding instituted against the insurer? Your Honor, that's a common provision in excess policies, and all that means is that the bummershoot, as an excess bummershoot, fancy word for umbrella policy in the marine world, all that means is that the bummershoot will not be called upon to actually hire a lawyer, to hire a lawyer to defend PTP in its underlying case against Caster. And it has the right to associate with the defense. This is inconsistent with most liability policies. I'm more familiar with personal injury policies, which include a duty to defend if any count of the complaint comes within the coverage provisions. And this is inconsistent with that. You would agree? This is not inconsistent with excess liability policies. I believe what you're referring to is a primary duty to defend policy. Or even umbrella policies have that responsibility generally. Most umbrella policies have this right to associate language. And, again, it is not PTP's position that these policies are duty to defend. But I think if you take a look at Kozlowski and WorldCom and some of the other cases cited in our briefing, you'll see that on behalf of language, and, Judge Chen, I don't mean to disregard the remainder of the insuring agreement, but it's those words that are highlighted in quotations in those cases as rendering these policies duty to pay policies. And with the duty to pay, it's based on the potentiality of coverage based squarely on the four corners of the underlying complaint. And here we have an allegation of an occurrence, being the rupture at PTP's facility on February 4th of 2007, which gave rise to the Castor lawsuit, allegations of property damage, and being unable to fulfill its contractual obligations to other parties during that time. And I believe we have a, based on the four corners of the underlying complaint, we have a potentially covered occurrence for which PTP incurred significant defense costs, and importantly, most importantly, did not incur any liability. There's a finding of no liability against PTP. So there's nothing to recoup here. If you look at the Arthur Johnson case from the Court of Appeals, or excuse me, from the First Department. Save some time for a bottle. Thank you, Your Honor. May it please the Court, Counsel, Jay Lenaro on behalf of Bumbershoot Underwriters, Houston Casualty, et al. PTP performs an incomplete analysis which results in an incorrect conclusion by PTP. There are two issues I'd like to discuss with the Court. First, the right to recoup fees, and secondly, the ultimate coverage determination. In the right to recoup fees, PTP focuses on the type of offense that is owed. It's clear PTP just conceded that this is not a duty to defend policy. There are two other types of policies generally that are addressed, a duty to pay defense or a duty to indemnify, wherein at the end of the case, an insurer may recoup fees if it has paid those fees. Bumbershoot Underwriters contributed to the payment of the fees. It doesn't really matter what label you put on it, right? It's the terms of the policies that govern. Yes, Your Honor, we would. And here, what is the language in the Bumbershoot policy that suggests that there was an ability to recoup the costs that had been advanced? It is with this honorable Court, first of all, it does matter, in our opinion, what label is put. New York law has stated or certainly indicated that if there is a duty to defend, an insurer may not have a right to recoup defense fees. However, if defense fees are paid pursuant to an agreement to pay defense fees or to indemnify, then clearly under New York law, an insurer has a right to recoup those fees if it has reserved that right. Secondly, with regard to the Bumbershoot policy, as the Court noted earlier, Bumbershoot Underwriters will pay on behalf of the insured all of the sums which the insured shall become legally liable to pay as damages. Damages are defined as a consequence of any occurrence covered here under. If underwriters have paid those fees, then underwriters have a right to recover those fees. New York law and the defense cost agreement which were entered into by PTP and the underwriters specifically provide for that. This honorable Court in Stonewall said that using the same wording or interpreting the same wording as Bumbershoot Underwriters, that you only pay defense costs if they are covered. The Court just noted the wording in Stonewall wherein at the end of the case, the Court said with regard to that issue, that policies do not contemplate unconditional payment of defense costs for potentially covered claims, but only payment of costs if indemnification is required. This doesn't result in an odd result, right? If PTP wins the Castor lawsuit, it doesn't get coverage for attorneys' fees from insurance companies. But if it loses and it was a negligence on its part that contributed to the injury to Castor, then there is coverage for it and the fees are paid. Isn't that kind of an odd result? I would suggest that it is not an odd result. And respectfully, I would suggest that. Why not? Because that is not the evaluation that is actually performed. Some of the cases say, and one of the authorities went on specifically on these insurance issues, has suggested that the Court must determine whether or not coverage would have been provided if all of the allegations in the underlying suit had been proven. In other words, you don't just have to look to the result of the underlying case. The Court has the right, Judge Rakoff had the right to take evidence if he deemed it necessary, and PTP had the right to put on evidence. And Judge Rakoff could have made a determination under certain circumstances that coverage would have been provided if certain allegations had been proven. But that's not what occurred here. Let's make it simple. So Castor has the lawsuit in the New York court saying, our injuries in Panama were the result of a defective valve, and that's PTP's fault. PTP's response was, oh, no, it was because you hadn't filed your papers in Panama, and that's why the injunction was placed, which delayed your getting your oil out. Castor loses. PTP wins that state court case, says it wasn't the valve. It was because you hadn't registered as a foreign corporation. That's what caused you the loss, right? But as a result of that, its attorney's fees aren't covered under the policy by winning that. Isn't that what happened? Its attorney's fees are not covered under the policy because the wording of the policy specifically addresses that and states that damages are only going to be paid as a consequence of liabilities covered herein. That is agreement between underwriters and a very sophisticated party. So if Castor had won, these fees would be covered by the two insurers? No, Your Honor. If Castor had won, there still would have to be a coverage determination because that was what it was agreed to in the defense cost agreement and because New York law specifically provides for such. The coverage determination still would have had to have been made by Judge Rakoff, and that is where we suggest that PTP misunderstands or misconstrues the issue. PTP suggests that this court should look at only the allegations in the underlying complaint. It is clear that is not the case. A coverage determination had to be made. That coverage determination, as Stonewall and Kozlowski say, determines the ultimate liabilities. The ultimate liabilities are not determined by the allegations of the underlying complaint. The ultimate liabilities are determined by the coverage determination which is made based on the facts put before Judge Rakoff. An entire record was put before Judge Rakoff. He found no undisputed facts, and based on the wording of the policies, specifically found that underwriters should be reimbursed pursuant to the defense cost agreement. Underwriters hereby request that Judge Rakoff's ruling be affirmed and seek that fees be issued. Thank you. We'll hear from you, Colin. Good morning, Your Honors. I'm Steve Reibel, and I represent the primary. There's been a lot made of pay to be paid, paid on behalf of, but our primary policy with that wording only applies to indemnity. We have a custom clause here that deals with defense costs. That custom clause stands in addition to the $1 million indemnity policy. That custom clause makes it very clear that we only pay after we've paid indemnity. There's no pay on behalf of in that clause. So we have a different type of policy that's really rather common in marine liability policies. These are old liability policies where it allows the oil company to pick their own counsel and to conduct their own defense. And then after that's all over, we have to decide whether there's coverage versus non-coverage and then pay their defense costs if they're covered after an ultimate decision of liability. Now, in this particular case, because it was a dispute, we entered into a defense cost agreement, which we thought the parties recognized that after the decision of Judge Rakoff that we would then abide by the decision. It's very clear that it's judicial estoppel on the findings of fact of the state court. That's done. We're not trying to relitigate that here. We're trying to apply that to the coverage terms of the policy. Counsel quotes Kozlowski case, but he only quotes half of it. In the Kozlowski case, the obligation to defend is readily understood. The insurer must afford a defense to the insured for covered as well as non-covered claims. The obligation to pay defense expenses, on the other hand, which he's alleging is the situation here, which we disagree with under our custom clause, on the other hand, is not easily defined or applied. Under this type of defense coverage, the insurer is entitled to differentiate between covered and non-covered claims. And this Kozlowski case stands for that, and he keeps citing it for a different proposition. So we look at it here, whether it's an indemnity policy or a duty to advance costs, and remember, in our policy, there's no wording to advance costs. There's no duty to defend. All right? When you look at this, really, we're at the point now where the allegations of the complaint are irrelevant. What we have now is a decision before the state court that held proximate clause here. The proximate clause had nothing to do with the operation of the PTP facility, and that is judicial estoppel. And therefore, there's no coverage here under our insuring clauses. The triggering event for the whole thing was the spill, right? No. Your Honor, that's been found, and that's judicial estoppel here, the triggering event. In the sense that if there hadn't been a spill, there would have been no need to exercise jurisdiction over caster. There would have been no need. Your Honor, this is a marine insurance case. This is a fish and proximate clause. The court has found, the lower court has found what the proximate clause is. It's the failure to register business in Panama. It really has nothing to do with the oil spill and nothing to do with the operation of the facility. That's been decided already, if that answers your question. Are you relying on the exclusions, too? Yes, we are, yes, and this exclusion for loss or delay, there's an argument made in a but-for analysis on flow and cause. Once again, I say that that's a fish and proximate clause. Under maritime law, it's not the nearest in time. It's really a decision about the efficient proximate clause. Here, Judge Rakoff decided there's no coverage at all. And really, in property damage policies, there's no coverage for consequential losses unless there is physical damage in the case. And there was no physical damage in this case. So, yes, we're asserting that exclusion. We're also asserting the exclusion for confiscation by a government authority. And we're also asserting this breach, this breach of a condition, precedent to liability, that they were supposed to put in the lease with Castor, that Castor got insurance, not PTP. And, therefore, we're not liable either. So, basically, with this particular type of marine policy, please keep in mind this isn't what you're used to seeing, Judge, in terms of a liability policy and personal injury with duty to defend. We've clarified that's not where we are. We're really on a situation where the custom clause applies here, and there really has to be a payment in indemnity. In this circumstance, we paid the Panama cases. We paid them. So we attempted to compromise this situation by entering into the defense cost agreement. When you say custom clause, what clause are you talking about? The custom clause, Your Honor. What does that mean, custom clause? Well, basically, if you keep in mind, this is a broker-drafted policy. I'm asking what is the language that you're referring to as a custom clause. What section? Is it Section 3, the cost clause, or is it exclusions, or is it the insurance clause? No, it's Section 3, the cost clause. That's what you refer to as the custom clause? That's right. It's A251 on the appendix. Thank you.  Thank you. Thank you, Your Honor. I hear the rebuttal. How do you respond to the argument about consequential losses, the exclusion for consequential losses? Your Honor, the exclusions in this case must be viewed under the duty to defend standard. I say duty to defend because these are duty-to-pay defense cost policies. In Kozlowski and WorldCom, the standard— There's an exclusion for liability arising from delay, loss of market, consequential loss. Why does that not apply? I understand, Your Honor. The standard is whether the insurers can prove—the insurers' burden to prove that the allegations cast the pleading solely and entirely within an exclusion, and the allegation is subject to no other interpretation. But the losses—Castor's losses here, are they not consequential losses? We believe they're not, Your Honor. Why aren't they consequential losses? The Arthur Johnson case that I began discussing in my opening remarks is something that I believe you hit on when you were asking questions to the insurers, Your Honor. And it's—the Arthur Johnson case is a case that involves a CGL policy, so certainly a little different than a marine policy. But it's a CGL policy that also includes an endorsement for liabilities assumed by contract, which are also present in both of these policies. Here's what Arthur Johnson says about the liabilities. So long as there is an act of the insured which contributes in some degree to harm the property of others, there is liability under the policy without regard to whether such act was the direct and proximate cause for which the insured could be held responsible and tort. That's what we have here. We have an alleged act by PTP, the rupture, the oil spill. And so long as there's an allegation that that contributed in some way, in some minutiae way, to the alleged damages of Castor, there's coverage. Otherwise, the results in this case would have a perverse incentive for PTP to have settled the case. I mean, after oral argument in front of Judge Ramos, if all the parties read the body language of the judges and saw, hey, this seems to be going PTP's way and out in the hallway, said, listen, it's a $15 million case, why don't we settle this case for $100,000 and be done with it? If that had happened, PTP would have coverage because the allegations in that case involved alleged acts of PTP which contributed in some small degree, not the proximate cause, as Judge Ramos has mentioned, some small degree to the ultimate loss. That's First Department, 1958. I know it's an old case, but oldie but a goodie. It's never been overturned in any way. It's never been distinguished in any material way on that ground. And we believe that should govern the case here. If you'd like to hear my response to the other points, I have them. But if not- You're out of time. Thank you, Your Honor. We will reserve decision.